There are three cases on the argument calendar, but they are going to be argued in tandem since the lawyers pretty much stack up the same way across the board, with two on one side. So, we've assigned 12 minutes to each side of the tandem cases, and that means that you've reserved... I don't think I have mine listed here. One minute, Your Honor. Yeah, just one minute for rebuttal. Okay, so is it Mayer or Marr? Marr, Your Honor. Mr. Marr, give us one second to just get settled, and then the floor is yours. Is it time for the silence? All right, I think it's not too bad. You may proceed. Good morning, Your Honors. Bill Marr on behalf of plaintiff's appellants. In order for the Champerty Statute to apply, the purpose must be to profit off litigation to which you are otherwise a stranger. Here, as a matter of law, and as the defendants readily concede in their briefs, the CDO issuers cannot profit one dime from this litigation. So, you're really against them taking issue with the decision in the U.S. Bank, right? Absolutely, Your Honor. Okay. They applied the wrong legal standard for Champerty. They said that it's a fact issue about intent and purpose to bring a lawsuit. So I get that, but doesn't the issue of, doesn't issue preclusion prevent you from doing that? In other words, where an issue has been fully argued and it's been resolved decisively in a prior proceeding, that's what issue preclusion is, right? We don't go back and look at it on the merits. Correct, Your Honor, but it doesn't apply in these circumstances, and here's why. On the Bank of New York Mellon trustee case, they waived Champerty as an affirmative defense. I know that's a separate argument with respect to that. Yes, so it's not the same issue. We'll come back to that one. What about the other two? On the other two, it's a pure issue of law, Your Honor. On these facts, and I'm going to talk about why Champerty is a pure issue of law in these circumstances. Under New York law, collateral estoppel does not apply to pure issues of law. New York law applies here because this is a diversity action. In fact, that was Your Honor's ruling two years ago, Judge Sullivan, for Plymouth Venture Partners in the Second Circuit, that under New York law, pure issues of law are not subject to collateral estoppel. That's, of course, the American Home decision in the New York Court of Appeals in 1977. But in this case, it seemed like the district court in the U.S. Bank case rested its prudential standing analysis, which was based on Champerty, on factual findings, right? Correct, Your Honor. Regarding the intent and purpose behind the assignment. Correct, Your Honor. So that's a mixed question of law and fact. No, it's not. We don't dispute, Your Honor, the factual findings that the purpose of the assignment was to bring a lawsuit. What we are saying is that is not sufficient to find Champerty under New York law as a matter of law. The mixed question of fact and law that Your Honor brought up, that's when the facts are so intermingled with the law that they cannot be separated. When you can separate the legal issue from the factual issue, it is not a mixed question of fact and law. It's solely a question of law. And for that, I cite, Your Honor, Prince and Richardson on evidence, section 1304, in which they say a mixed question of law and fact arises where the action involves both questions blended in such form as to make it difficult, if not impossible, to leave the fact. But the intent and purpose behind the assignment is a factual question, isn't it? Absolutely. That's a legal question? No, no, Your Honor. I concede that that is a factual question. What I'm saying is under the statute in New York for Champerty, it is not sufficient to find Champerty. You need to find a profit motive. And here, as a matter of law, as defendants readily concede, there is no profit motive because the issuers cannot collect a dime from this linkage. Whose profit motive does it have to be? I'm sorry, Your Honor? Whose profit motive? A lot of the Champerty case law is talking about concerns about the motives of counsel as opposed to the motives of the named parties. It's the motive of the assignee. That's the only motive that matters? In this case, Your Honor, for the assignee, it's always the assignee. Now, most of the cases, a lot of the early cases, dealt with lawyers dealing with assignments in order to get legal fees. But the assignee is the relevant party for are they making any upside, any piece of the action from the litigation? There's no question. They say we don't even keep a dime of the money. The CDO issuers keep nothing. That actually is, as a matter of law, on the face of the reassignment agreements. The reassignment agreements say that the issuers have to turn over all of the net litigation recoveries to the indenture trustees for them to pay them to the note holders. The CDO issuers keep nothing. That's A3099 in the Deutsche Bank record, A2895 in the bank in New York Mellon. I mean, you keep calling that an issue of law, but that sure sounds more like an issue of fact as to what the language of the CDO agreements are and what the intent and purpose behind it was. It's the face of a contract, Your Honor. The contract, the reassignment agreement, says on its face that the CDO issuers hand 100% of the net recovery over to the CDO indenture trustees to be handed to the note holders. The CDO issuers cannot profit as a matter of law on the face of the reassignment agreements. They don't dispute that. The defendants argue that, for a standing, we have no interest because we collect nothing from the litigation. That's exactly the issue that we're saying here, Your Honor, as a pure issue of law on the face of the contract. But so the face of the contract is an issue of law? It can't be that those are factual concerns. I mean, sometimes there's no dispute as to the facts of a contract, and the meaning is plain and unambiguous. But you seem to be saying that that makes it an issue of law. If you're interpreting unambiguous contractual provisions and applying case law to those unambiguous contractual provisions, it is a pure issue of law. That is actually, there are newer cases on that point, Your Honor. Sterling Bank, Sterling National Bank, First Department, 2006. Collateral estoppel does not operate to bar reallocation of pure questions of the law, which in this case is the interpretation of an unambiguous contract. So are you suggesting then any time a resolution of a case depends on factual findings as well as application of the law? If there's a stipulation as to the facts, or the parties agree as to the facts, that automatically the resolution of cases make it just a purely legal issue? No, I'm not taking an absolutist position, Your Honor. New York law is different than federal law, and it's different than the law of many states. Pure questions of law are not subject to collateral estoppel in New York law, and we have to apply New York law here. What I'm saying is there are circumstances in which facts may be of issue, and collateral estoppel theoretically could apply. What I'm saying is on these facts, on an unambiguous contract, which is the reassignment agreement, saying we have to turn over the net proceeds of the litigation to them, and they don't dispute that. They argue we don't keep a dime. The CDO issues cannot violate the Champerty Statute as a matter of law. I cite for that the IKB case, which was just decided last month in the commercial division. We submitted a supplemental authority letter. The Bank of New York now admits that this is the legal standard in their brief, in their trustee brief at page 49. Quote, Champerty prevents strangers to a transaction from purchasing a claim to profit from it, end quote. That was this court's ruling in law funding in 2009, initially, when you certified- I don't think there's any dispute about what is required for Champerty. I guess the issue is whether what the court did in the US Bank action was purely a legal issue. It wasn't purely a- Legal determination. Your Honor, what the US Bank court said is, you took the assignment with the intent and for the purpose of bringing a lawsuit. That's a factual issue. We don't dispute that. It's not sufficient to find a violation of the Champerty Statute. This court in law funding held that the intent to sue by itself is not sufficient to violate the Champerty Statute. Is it necessary without being sufficient? There is a necessary element to violate- So then it was a necessary fact finding by the US Bank court? It was necessary in order to come within the face of the language of the statute. The statute, however, is overbroad, and the Court of Appeals has held that in Bluebird and law funding and other cases. Just because you meet the intent and purpose of bringing a lawsuit, that reaches legitimate transactions and quote-unquote illegitimate transactions that are Champerty's. And it is clear that the court distinguishes those and said in Bluebird, many times we find that the Champerty Statute does not apply as a matter of law. I'm saying here on these facts it cannot apply as a matter of law because there's no profit motive. The CDO trustees don't have any profit, and they admit that. The defendants admit that throughout their papers. I understand that, but I'm still troubled by how you claim that this doesn't raise issues of that. I'm conceding the facts, Your Honor. It is a separate issue of beyond whether you fit within the face of the statute, the intent and purpose of bringing a lawsuit. That's overbroad. That catches legitimate transactions in which you have an interest in the transaction. The Court of Appeals says that doesn't apply. The statute doesn't apply to you. There are many instances in which the, for example, perfect example, love funding. In love funding, Judge Shinwin in the district court found after a bench trial, as a matter of fact, that the purpose of bringing the lawsuit was to buy a lawsuit against the originator of the underlying loan. That's without factual dispute. Despite those factual findings, this court held as a matter of law in love funding that, quote, an intent to sue is insufficient by itself to violate the statute. And then you went on to hold, as a matter of law, the assignment of the claim was outside the purview, the prescription of the Champerty statute, due to the trust's preexisting proprietary interest, which the older cases call legitimate business interest. This court's decision in love funding compels a similar result here. There was a- But again, it seems that you're suggesting that love funding and the U.S. Bank opinion from last year are irreconcilable, right? Yes. Yeah, but, I mean, you don't get to just sort of take it up with a new panel and ask us on the exact same facts and the exact same issue to go the other way, right? That's what issue preclusion is. Your Honor, under New York law, a pure issue of law is not subject to collateral. All right, so that is ultimately the answer to that. Yes. That is not federal law. Federal law is different. Other states' law is different. In New York laws, you held two years ago, Your Honor, in Plymouth Ventures, New York law means that pure issues of law are not subject to collateral estoppel. And this is a pure issue of law that the defendants concede. Well, we'll hear from them whether they concede that point. There's a separate- Oh, I see my time has expired, Your Honor. There's a separate issue for Champerty. A separate issue for Champerty? You mean for the Bank of New York Mellon? That's a 14 case? No, there are two pure issues of law. One is we cannot profit. Two is we have a legitimate business interest in the subject of the litigation. We are the CDO issuer. We are not a stranger to the transaction. We are endemic to the transaction. This was all argued in the U.S. Bank action, right? It was, but it wasn't addressed, Your Honor. The legal issue of whether or not we are a stranger to the transaction or have a legitimate business issue, interest in the litigation, was not addressed in that opinion. It's a pure issue of law. On the face of the indentures, we have obligations. We have- that was not addressed by the panel. Well, it may not have been addressed by the panel, but it was certainly argued. There was an opportunity to argue all of these things about what Champerty requires under New York law, right? Correct, Your Honor. But under the pure issue of law, you look at the face of the indenture, which is an unambiguous contract. You see these interests. It also takes it outside the prescription of the Champerty statute. So there are two separate legal issues involved here on Champerty. One is there's no profit motive. Two is that there is a legitimate business interest that the CDO issuer has in connection with these transactions. The RBS pay our note hold. There are a lot of issues that we refer to in our briefs. We are not strangers to this transaction. We are endemic. We are integral to the transaction. And the idea- That was all true in the U.S. Bank as well, right? Yes, but the idea that we could be a stranger to a transaction that is us is anonymous. It's just hard to believe that that can apply and that Phoenix, like the U.S. Bank case, can stand. In fact, in the court that was just decided last month by IKB, the defendant cited this panel's ruling in Phoenix, like the U.S. Bank, and the court ignored it because it makes no sense, Your Honor, as a pure matter of law. Okay, but you're asking us to effectively overturn or to reject the conclusions in the U.S. Bank case, right? Yes, but what I'm saying is they said it's intent and purpose of- You're saying they made a mistake. No, I'm saying that they didn't apply the correct legal standard. Right, okay. I understand that point, but you're basically saying that we should just ignore what they did and do it again. I'm saying you have an obligation under New York law, which is collateral estoppel does not apply to pure issues of law, to decide correctly the pure issues of law that are presented to you. There's no profit motive. We have a legitimate business interest. For both of those reasons, Champerty cannot apply as a matter of law. That was what Love Funding held. That's what this court held. So there can never be issue preclusion in a case involving a Champerty defense. Is that what you're saying? No, Your Honor, because there are some instances in which the profit motive might be mixed up with the facts. What I'm saying here is if you look at the face of an ambiguous contract, which is the reassignment agreement, it says specifically, quote, any net recovery is obtained by the directing holder in the lawsuits after payment of the costs- We know what it was. Okay. I think that- well, let's hear what your adversaries have to say, and you reserve a minute for rebuttal. Thank you, Your Honor. Thank you, Mr. Marr. So we're going to divide up the argument, and so Mr. Rothfeld, are you going first? Is that correct? Yes, I am, Your Honor. Okay. I'm Charles Rothfeld, Mayor Brown, representing Bank of New York Mellon, and I'm dividing the argument between Peterson, representing Deutsche Bank. And as to both of the banks, the court can resolve these cases on each of three separate and independent grounds, issue preclusion, as the court has been discussing, lack of Article III standing, lack of prudential standing. To avoid duplication in our arguments, I'm going to begin by focusing on issue preclusion, and to the extent there's more to talk about, Mr. Peterson will talk about Article III and prudential standing. Okay. So maybe we start with where Mr. Marr spent the bulk of his time, which is arguing that there's no issue of fact here at all. This is a pure issue of law as to what the agreement said, the assignment agreement said. And I respectfully have to say that we think that that's just clearly wrong. It's sort of inconsistent with the face of the decisions in the U.S. bank case, both Judge Broderick's decision in the district court and this court's decision on appeal. And just reading this court's statement as to its rationale for affirming a decision, based on the factual findings of the district court, it is clear the assignments were made, that were made were indeed chamfered as they were made with the intent and for the primary purpose of bringing a lawsuit. And so this court clearly understood the factual determination to be crucial to the decision. Judge Broderick's decision went on at some length about the factual underpinnings for his determinations as to the chamfered nature of the assignments there. And sort of on the face of it, that is a factual conclusion that is the basis for this court's decision. The courts certainly resolve the case, the ultimate question in the case, whether there's prudential standing by applying the law to those facts. But that's a classic mixed question of law and fact. That is what a mixed question of law and fact is. And I think it's conceded, I think that my colleague here has conceded this morning, that mixed questions of law and fact are subject to issue preclusion under New York law. And I think that's the end of this case for the reasons that the court has been exchanging this morning. If we weren't to resolve this issue on issue preclusion, hypothetically, do you think you listed the three ways to resolve it? Issue preclusion, Article III standing, and prudential standing. Do you agree with the U.S. Bank case that we don't need to reach Article III standing? We can go right to prudential standing if we were to not apply issue preclusion? Yes, we think that that's absolutely correct, Your Honor. Both the Supreme Court and this Court have said repeatedly that a court can kind of skip over Article III standing and decide a case on some threshold ground that does not involve disposition of the merits, which is exactly what it did in the U.S. Bank case deciding it on prudential standing grounds. Issue preclusion is another one of these threshold questions. Well, would you say issue preclusion would clearly not be a merits analysis, right? That's much more like foreign non-convenience. That's absolutely correct, Your Honor. Prudential standing seems to be a closer call, or do you disagree? We do disagree. We think that prudential standing is also not a merits determination. And, again, this Court said as much in the U.S. Bank case. So I think the Court could decide the case on any of those grounds, but our submission is that the best, simplest, most efficient way to do it is on issue preclusion, and that is on the face of it we think is clearly correct for some of the reasons that the Court has been exchanging this morning. How do you respond to your opponent's argument that issue preclusion, we shouldn't apply issue preclusion because it is, and I know you've addressed the purely, whether it's a purely legal issue or not, but the other case he cited, well, he said it's inconsistent with that case. How do you respond to that argument? Well, we think that that's not correct, but it's sort of also immaterial because the whole point of issue preclusion, as Judge Sullivan noted in his exchanges, is that whether the decision was correct or not is sort of beside the water under the bridge. And the whole point of issue preclusion is that it is preclusive. The whole point is judicial economy, right? That's the whole point. We don't want to encourage courts to be doing things multiple times where it's the same issue, same parties, and the same argument. That's exactly right. And as I think the Court heard this morning, that's just what's going on here, that the plaintiffs would like to relitigate exactly what happened in the U.S. Bank case. And the whole point of issue preclusion is to make that impossible, so that the courts don't have to continually revisit the same issue over and over again. You get a full and fair opportunity to litigate, and there is no doubt here that the plaintiffs had a full and fair opportunity in the U.S. Bank to litigate both in the district court and in this court, and they did, in fact, litigate. And they lost at both levels. And the whole point of the issue preclusion doctrine is that they don't get to say we get another bite of the apple. I mean, what's to stop them from doing it a third time or a fourth time, and continue to make these arguments that this court misunderstood the New York State law. Well, Mr. Barr didn't get to make this point. He alluded to it, certainly, in the briefs, is that there's an argument, certainly, that the 2014 Bank of New York action is different because Champerty wasn't even asserted as a form of defense in that case, right? That's their argument. I have to disagree with that, I think, for two reasons. One is the district court here, Judge Caproni, even while denying the bank's leave to amend its answer to assert an affirmative defense of Champerty, nevertheless understood her orders to allow the bank to assert the lack of interest for prudential standing purposes and for issue preclusion purposes. And so I think this court should defer to the district court's understanding of the procedural state of play as to whether or not the bank could argue Champerty for those purposes. But even leaving that aside, there's, I think, a more fundamental problem with the plaintiff's argument here, which is that it conflates standing and an affirmative defense on the merits. It is always the plaintiff's burden to demonstrate that they have standing, both Article III and prudential standing. And until they've made that demonstration, any issue having to do with the merits, including any issue. So they have to disprove Champerty in order to establish prudential standing? I think they have to prove that they have an affirmative right to assert the interests that they are asserting here that are the base for their prudential standing. And if they can't make that demonstration, then we should never get to the point of an affirmative defense. So if, in a Garden Variety case, the defendant never asserts the affirmative defense of Champerty, nonetheless, if the thing goes to trial, the plaintiff would have to establish that it wasn't Champerty's? If it's a case in which Champerty would mean that there is no prudential standing, if it's a case in which the plaintiff would be asserting somebody else's interests, I think it is their obligation to demonstrate that they have a right to do that. Again, the district court here understood that her orders allowed the bank to make the argument as to Champerty for the purpose of prudential standing. And so I don't think the court has to decide the question in other circumstances in which the court's orders denying leave to amend for Champerty to assert the affirmative defense. All right. Unless there are other questions from my colleagues. Sorry, Your Honor, I've tried your patience, but thank you so much. No, that's all right. Thank you. Mr. Peterson, you've got six minutes. Thank you, Your Honor. I hope to use fewer. William Peterson, on behalf of the Deutsche Bank appellees, may please the court. We fully agree, of course, that collateral estoppel resolves all three of the appeals for this court and the collateral estoppel is the most straightforward ground. I thought we're not calling it that anymore. Issue proposal. Yeah, you're dating yourself. Call it a touch of formality, Your Honor. But even apart from issue preclusion, I'd like to argue that Phoenix Light versus U.S. Bank was correctly decided and that its reasoning should be followed here, even if this court didn't give issue preclusive effect to it. My friend jumped straight to the issue of Champerty, which is where I'd like to begin as well. You heard there is not a challenge to the factual findings that were made in the U.S. Bank litigation and that were followed by our district court here. I guess there's a dispute as to whether they were factual findings, but nobody disputes what the findings were. Well, specifically the finding as to the purpose in bringing the action, which in our view is the key finding for Champerty. If you look at New York's Champerty statute, it prohibits taking an assignment, quote, with the intent and for the purpose of bringing an action or proceeding on the claim. That's what you see the Court of Appeals reciting the standard as. In the love funding decision, the statute prohibits the purchase of claims with the intent and for the purpose of bringing an action. The plaintiffs have admitted today that they are not challenging the finding, that they acquired these claims with the intent and for the purpose of bringing an action. And if you look at the standard recited in love funding itself, it goes back to the purpose. What love funding doesn't hold is that the possession of a proprietary interest as a matter of law lets you out of Champerty. Quoting from page 202 of the opinion, if as a matter of fact the trust's purpose in taking assignment of UBS's rights under the love MLPA was to enforce its rights, then as a matter of law, given that the trust had a pre-existing proprietary interest in the loan, it did not violate the Champerty statute. So time and again you see the New York courts focusing on purpose. The argument my friend made in the briefing was that the proprietary interest alone is enough to get them out of the Champerty prohibition. We think love funding refutes that. We also think the U.S. Bank decision fully addressed that and pointed out that unlike the plaintiff in love funding, who held the underlying loan at issue, here plaintiffs retain no ownership interest in the RMBS certificates. They considered love funding. They distinguished love funding. We've heard I think a slightly different argument this morning, which is that you don't just have to have an interest and an intent and purpose in bringing an action, but there's also some type of profit motive requirement to commit Champerty under New York law. I'll point out first of all, I don't believe that was briefed. I reviewed the opening brief and the reply brief. I did not find any sort of suggestion in there that Champerty requires a profit motive. I'll also point out there's no authority that's cited for that. Love funding and the New York statute recites the standard as Champerty is committed if you acquire the claim with the intent and purpose of bringing an action. Now, again, we agree the easiest ground of decision here is issue preclusion and that the factual or mixed question of law and fact decision in the Phoenix Light versus U.S. Bank is fully entitled to issue preclusive effect. We pleaded Champerty as an affirmative defense. That issue is not an issue in our appeal. But if this court were to address the merits or address the merits in the alternative, Phoenix Light versus U.S. Bank was correctly reasoned, and we'd urge you to follow that reasoning. Perhaps this is a better question for your opponent, but I'm struggling with the notion that a question of someone's intent or purpose could ever be a question of law. I mean, it seems to me that if you're trying to determine intent or purpose, you might have a contract, but doesn't it call for a question of fact? I suppose you would agree with that, and maybe that's a better question. Yes, Your Honor, we fully agree with you. And when you look at the decision in U.S. Bank, it explains that its analysis is based on the factual findings of the district court. It's an issue to which issue preclusion should apply. So unless the panel has questions, I'm glad to return my time. All right. Thank you very much, Mr. Peterson. We'll now hear from Mr. Barr for a minute or so. Your Honor, Sterling Bank holds that collateral estoppel does not operate to bar litigation of a pure question of law, which in this case is the interpretation of an unambiguous contract. That's the holding of the First Department in Sterling Bank. They suggested that prudential standing is a mixed question of fact and law. On these circumstances, it is not. We have an assignment. The assignment on its face is valid. The only way in which we don't have prudential standing is their affirmative defense of champerty. And Your Honor's correct. I didn't get a chance to address Judge Caproni foisting that obligation on us. That's improper. And in fact, this court held that in contemporary mission in 1977, the plaintiff need not disprove affirmative defense in order to prevail on a breach of contract claim. Here, Judge Caproni changed the normal burden of an affirmative defense and put it on us under the idea that it was part of the standing analysis. But it is not. This court held in SM Kids that whether an assignment is valid is a merits issue under 12b6, not a jurisdictional issue under 12b1. That's what the Supreme Court also held in June Medical. Prudential standing can be waived. And in Ashcroft, they said Article 3 standing cannot be waived. So Judge Caproni's misunderstanding that champerty was an issue of Article 3 jurisdiction, which it's not, led her to foist that obligation on us to disprove champerty when it was their burden all along. But in these circumstances, it doesn't matter because champerty is a pure issue of law. And I understand, Your Honor, Judge Sullivan, the judicial economy issue. New York State has decided as a matter of policy, their policy, which this court is required to apply, that pure issues of law, despite judicial economy, are not subject to collateral estoppel. The intent and purpose of the assignment was to bring this lawsuit. As a matter of law, that is not sufficient to violate the champerty statute. And that's what this court has to decide. We have no profit motive. It's evident from the face of the reassignment agreement. They don't dispute that. We also have under the- What is your best case for this profit motive requirement for champerty? Love Funding. Love Funding and Love Funding 1, 556 Fed 3rd, 113, 2009, when you certified this case to the Court of Appeals. A party's acquisition of rights in order to profit from the very act of maintaining a lawsuit by generating compensable costs and fees constitutes a classic case of champerty, end quote. This court, 40 years ago, in Alexander, defined champerty to be a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds. You can have legitimate people taking an assignment in order to bring a claim. That's not champerty, even though the plain words of the statute in theory cover it. That's why the New York Court of Appeals has carved back in Bluebird, in Love Funding. There are many cases. One of the cases that was cited in Love Funding was Lib Par Realty. Lib Par Realty decided as a matter of law. But isn't it dependent on whether you own the rights to the loan as well? Isn't the issue here that in taking the right to sue, your client didn't take back the loan itself? No. Only took back the right to sue, so will profit from that, but doesn't have the obligations attendant to owning the loans themselves. Well, issue one, Your Honor, we cannot possibly profit from the litigation because we have to turn all the money over to the indentured trustee to pay the note holders. We don't have any profit. But issue number two, you're raising your issue of number two, do we have a legitimate interest in the transaction? And the answer is yes. Love Funding does not say that you need an ownership interest. The suggestion that they're making is that you need an ownership interest in the claim, preexisting proprietary interest. That doesn't mean an ownership interest. In Love Funding, it was a securitization vehicle, just like we are. They had no more ownership of the loan than we have. There was an indentured trustee involved in that case. In fact, arguably, we have greater rights than Love Funding had because in that case, Love Funding could only sue when they got the assignment because they weren't a party to the original contract. We are the party to the original rights. We handed them to the indentured trustee and we get them back. When the notes are paid and the lien from the trustee is released from the collateral, it reverts to us. All the issues revert to us. We arguably have a greater interest than they had in Love Funding. But it's not an ownership interest. If you look at the cases, LIMPAR Realty, which I started to talk about, it's a First Department case that's cited with approval in Love Funding by the New York Court of Appeals. All that was involved in that case was, quote, assemblage. They took an assignment of a mortgage on a piece of property in order to foreclose on it. They had no interest in that mortgage or in that property beforehand. First Department says it's not champerty because you had an interest in assemblage because you owned parcels around there. You don't need an ownership interest. You just need a legitimate business interest. And if you look at the cases, Blue Bird cites and talks about all these cases in which we found not champerty. But when a legitimate business interest is the profits that may come from the lawsuit, that's what makes it champerty. When that's the only legitimate interest, you did have ownership, but it was sold. And when you received the right to sue back, you didn't buy back everything else. Correct, Your Honor. Right? But that's not what Love Funding holds. We have legitimate business interests that have nothing to do with ownership. We have obligations to enforce the collateral and to protect the collateral. The monies from the RMBS notes flow through to us to pay our note holders' obligations. We have a reversionary interest, meaning that it comes back to us. This is kind of like a life estate. We handed it to the trustee while the deal is going on. When the note holders get paid and the lien of the trustee is released, we get the collateral back. We have arguably an ownership interest, but we don't need one. All right. Well, I think we got our money's worth, so thank you all. Thank you, Your Honor. Well argued. We will reserve decision. May I make a scheduling comment to the court? Sure. And again, this relates to judicial efficiency. Counsel indicated there are two other appeals. One is Phoenix Light v. Wells Fargo, and one is Phoenix Light v. HSBC. Phoenix Light v. HSBC is being argued on May 12th before a panel of this court. I have no idea. Obviously, we don't know what panel. We would be willing to have that decided by this panel since we've had oral argument. HSBC decided, said in their papers that if we don't want argument, they don't want argument. If it's going to be a different panel, we think it's important to have argument, but I don't want to force more work on the court. Well, I think we'll decide the case in front of us, and then I guess you can decide what to do with the other pending. Very well, Your Honor. I'm just trying to be efficient. No, I understand. I appreciate the heads-up. Thank you. Good. All right. Thank you all. We have only one other case. That one is on submission, so that concludes our pretty short day of argument, but we still have a lot to think about, so thanks. Let me ask the courtroom deputy to adjourn the court. Court is adjourned.